UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANDHU FARM INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FERROSAFE LLC, *et al.*, <br><br> Defendants. | Case No. C21-1580-MLP <br><br> ORDER |

This matter is before the Court on Defendants' Ferrosafe LLC ("Ferrosafe") and BNSF Railway Company ("BNSF") (together, "Defendants") Motion for Partial Summary Judgment ("Defendants' Motion"). (Defs.' Mot. (dkt. # 26).) Defendants seek dismissal of Plaintiffs' claim for timber trespass.[1] (*Id.* at 1, 6-9.) Plaintiffs Sandhu Farm Inc. and its owners (collectively, "Sandhu" or "Plaintiffs") filed an opposition[2] ("Plaintiffs' Response" (dkt. # 37)), and

---

[1] Defendants also sought dismissal of Plaintiffs' breach of agreement claim. (Defs.' Mot. at 1, 9-10.) This claim was later dismissed based on the parties' stipulation, however, rendering this portion of Defendants' Motion moot. (Dkt. ## 27-28.)

[2] Plaintiffs filed a motion for partial summary judgment, which was later withdrawn. (Dkt. ## 22, 44.) In their Response, Plaintiffs incorporate by reference declarations and an affidavit filed in support of their withdrawn motion. (*See, e.g.*, Pls.' Resp. at 2 (citing Hurst Aff. (dkt. # 25)).)

ORDER - 1

Defendants filed a reply ("Defendants' Reply" (dkt. # 41)).[3] No party requested oral argument. Having considered the parties' submissions, the governing law, and the balance of the record, the Court GRANTS Defendants' Motion (dkt. # 26).

## I.   BACKGROUND

On April 19, 2021, and May 11, 2021, Ferrosafe sprayed herbicide Oust Extra on a BNSF right-of-way adjacent to Plaintiffs' blueberry farm. (Robert D. Lee Decl. (dkt. # 26-1), ¶ 5, Ex. D (dkt. # 26-5) at 1, 3.) In late May 2021, Plaintiff Jagmohan Sandhu, manager of the farm, noticed "abnormal and small" leaves on the blueberry plants near the railroad right-of-way. (Sandhu Decl. (dkt. # 23), ¶ 4.) Mr. Sandhu reported his observations to the farm's agronomist, Charlie Anderson. (*Id.*) Mr. Anderson took photographs and sent samples of damaged plants to a lab. (Hurst Aff., Ex. G (dkt. # 25-7) (Anderson Dep.) at 55:3-56:2.) The lab reported detecting sulfometuron-methyl, an active ingredient of Oust Extra. (Anderson Decl. (dkt. # 24) at ¶ 2.)

Agricultural researcher Thomas Walters, Ph.D., examined the blueberry plants in July 2021 and reviewed the lab results, Oust Extra label instructions, wind measurements taken during the time of application, and a Washington State Department of Agriculture investigation into the incident. (Hurst Aff., Ex. B (dkt. # 25-2) (Walters Rep.) at 2-3, 49-50.) Dr. Walters concluded that Defendants failed to comply with the Oust Extra label instructions to avoid spraying when winds exceed ten miles per hour and likely also failed to follow instructions to use coarse droplets to minimize drift. (*Id.* at 4.) Dr. Walters opined that the damage to Plaintiffs' plants was "a result of drift from the railway's herbicide application to their right of way on May 11, 2021." (*Id.* at 5.)

---

[3] In a footnote, Defendants' Reply requests that an academic article Plaintiffs provided in support of their opposition be stricken. (Defs.' Reply at 4 n.1; *see* Mark J. Lee Decl. (dkt. # 38), ¶ 3, Ex. B.) The Court finds the article unhelpful to the disposition of the instant motion and did not consider it, and thus finds it unnecessary to address Defendants' request.

ORDER - 2

In 2021, Plaintiffs harvested less than half of their average blueberry yield from the affected field, compared to the two years prior. (Sandhu Decl., ¶ 7.) Yield was also lower than expected in 2022. (*Id.*)

The parties have engaged in previous litigation related to herbicide drift from the railroad right-of-way onto Plaintiffs' blueberry farm. In July 2015, Ferrosafe's predecessor in interest sprayed herbicide Triclopyr, which Plaintiffs alleged drifted onto and damaged their blueberry plants. (Hurst Aff., Ex. E (dkt. # 25-5) at 4; Am. Compl. (dkt. # 1-1) at ¶ 2.3.) In 2019, Plaintiffs and Ferrosafe entered into an agreement settling claims based on the 2015 incident and stating that in the future there would be "[n]o wide spray – which means that no one should spray wide in the summer" in the railroad right-of-way adjacent to Plaintiffs' farm. (Am. Compl., Ex. D at 21.)

Plaintiffs filed the instant suit in October 2021, and Defendants removed the case to this Court in November 2021 on the basis of diversity jurisdiction. (Dkt. # 1 at 2.) Plaintiffs allege claims for trespass, nuisance, timber trespass, strict liability, negligence, and permanent injunction. (Am. Compl. at 6-13.)

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of

ORDER - 3

proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On the other hand, "[w]here the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita*, 475 U.S. at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation and internal quotations omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.*; *see also* Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

ORDER - 4

*2.    Timber Trespass*

Washington's timber trespass statute provides:

> Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, . . . timber, or shrub on the land of another person, . . . without lawful authority, in an action by the person . . . against the person committing the trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed."

RCW 64.12.030.

However, if the "trespass was casual or involuntary, . . . judgment shall only be given for single damages." RCW 64.12.040. "Once a [timber] trespass is established . . . , the burden shifts to the defendant to show it was not willful or reckless, but rather was casual or involuntary[.]" *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 626 (Wash. 2012) (quoting *Hill v. Cox*, 110 Wn. App. 394, 406 (Wash. Ct. App. 2002)). "In this context, 'willful' simply means that the trespass was 'not casual or involuntary.'" *Herring v. Pelayo*, 198 Wn. App. 828, 834 (Wash. Ct. App. 2017) (quoting *Pearce v. G.R. Kirk Co.*, 22 Wn. App. 323, 325 n.1 (Wash. Ct. App. 1979)).

A defendant may not escape liability under the timber trespass statute simply because it was not physically present on a plaintiff's land. *See Broughton*, 174 Wn.2d at 635 ("It would be absurd to allow a trespasser to escape the statute's reach, simply because he or she was not physically located on a plaintiff's property."). "[A] plaintiff may recover from a defendant who commits a direct trespass that causes immediate, not collateral, injury to a plaintiff's tree, timber, or shrub, even if the defendant has never been physically on the plaintiff's property." *Id.* at 640.

**B.    Analysis**

Defendants contend that, even if the April and May 2021 herbicide spray drifted onto Plaintiffs' property and damaged their blueberry plants, Plaintiffs' timber trespass claim must be dismissed because the damage was inadvertent. (Defs.' Reply at 2.) To the extent a timber

trespass claim could be maintained, Defendants further contend that treble damages are unavailable because any trespass was not willful. (*Id.* at 3-4.) Plaintiffs counter that Washington case law distinguishes between "acts" such as spraying herbicide, which can create liability under the timber trespass statute, and "culpable omissions," which cannot. (Pls.' Resp. at 13-14.)

In companion cases *Broughton* and *Jongeward*, the Washington Supreme Court held that the timber trespass "statute applies to direct acts that cause immediate injury, not consequential damage." *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 598 (Wash. 2012). In *Jongeward*, there was no liability where, through negligence, "a defendant [had] failed to prevent the spread of a fire." *Id.* at 603.

In contrast, the Washington Supreme Court noted in *Broughton* that a defendant would be liable under the timber trespass statute for intentional harm. "Because the statute focuses on conduct, not location, the statute was certainly intended to apply to . . . a defendant who stands on her own property and sprays herbicide on her neighbor's hydrangeas." *Broughton*, 174 Wn.2d at 635. Likewise, the Washington Supreme Court noted that "a person who stands at his or her fence line and intentionally sprays herbicide on a neighbor's trees engages in conduct prohibited by [the timber trespass statute] because the person commits a direct trespass and causes immediate injury to the plaintiff's trees." *Jongeward*, 174 Wn.2d at 605 (quotation marks omitted).

Defendants point out that, unlike in the scenarios described in *Broughton* and *Jongeward*, Defendants did not spray herbicide onto Plaintiffs' plants. (Defs.' Reply at 2-3.) Plaintiffs argue that they have presented sufficient evidence, based on the Oust Extra label instructions and the prevailing wind and other conditions, that Defendants knew their actions could result in herbicide drift onto Plaintiffs' plants. (Pls.' Resp. at 15-16.) However, even if Plaintiffs' position

is taken as true, this is not sufficient to establish a claim under Washington's timber trespass statute. The Washington Supreme Court has drawn a clear line between affirmative "direct" acts and "indirect" acts or omissions.

> [I]n each of our cases construing the statute over the last 142 years, the defendant . . . committed a direct trespass against the plaintiff's timber, trees, or shrubs, causing immediate, not collateral, injury. . . . These cases strongly suggest that the timber trespass statute does not apply when a defendant fails to prevent the spread of a fire. . . .
>
> In sum, our canons suggest that the legislature used the phrase "otherwise injure" to describe direct trespasses that are comparable to cutting down, girdling, and carrying off[.] Our cases demonstrate that the statute applies only when a defendant commits a direct trespass causing immediate injury to a plaintiff's trees, timber, or shrubs. Based on our canons and cases, we [conclude] a plaintiff cannot recover damages under the timber trespass statute when a defendant commits an indirect act or omission that causes mere collateral injury[.]

*Broughton*, 174 Wn.2d at 637-38.

A "direct" trespass means an act directed at the plaintiff's plants. Here, Defendants' acts were directed toward their own plants, and any drift was incidental, *i.e.*, collateral. Defendants' failure to stop spraying in windy conditions and failure to use the proper droplet size resemble the "culpable omissions" or negligence of the defendant in *Broughton* and *Jongeward* that allowed fire to damage the plaintiffs' trees. Defendants' acts are not "comparable to cutting down, girdling, [or] carrying off[.]" *Broughton*, 174 Wn.2d at 637.

Plaintiffs argue the timber trespass statute imposes strict liability, "even if a trespass is involuntary or accidental." (Pls.' Resp. at 11.) The Washington Supreme Court has indeed determined that, although it has "sometimes associated timber trespass with trespass, an intentional tort[,]" timber trespass itself is not an intentional tort but imposes "strict tort liability." *Porter v. Kirkendoll*, 194 Wn.2d 194, 208-09 (Wash. 2019). In doing so, however, the Washington Supreme Court expressly stated, "we do not overrule *Jongeward* [and] *Broughton*,"

ORDER - 7

which "held that the timber trespass statute applies 'only to direct acts causing immediate injuries'" and not "indirect acts or culpable omissions causing collateral damage[.]" *Id.* at 208.

"[U]nder a strict construction, [defendants] should not be subject to the severe penalty of treble damages without clear evidence that they violated the statute." *Broughton*, 174 Wn.2d at 634. Here, the statute does not clearly impose liability for spraying herbicide on one's own property and plants that incidentally drifts onto a neighbor's plants. Negligently allowing herbicide drift does not clearly fit into the statutory framework. *Cf. Jongeward*, 174 Wn.2d at 597 ("An 'involuntary trespass' is not negligence; it is still a trespass."). Because the statute must be strictly construed, the Court cannot impose liability here.

Accordingly, the Court concludes Defendants are entitled to summary judgment on Plaintiffs' timber trespass claim.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion (dkt. # 26) is GRANTED. Plaintiffs' claim for timber trespass (Am. Compl. (dkt. # 1-1) at 8-9) is DISMISSED.

Dated this 14th day of March, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge